IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAWN C.[1],                                        Case No. 3:21-cv-1080-SI

                Plaintiff,                    **OPINION AND ORDER**

      v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

             Defendant.

Ari D. Halpern, HALPERN LAW GROUP, 62910 OB Riley Road, Suite 100, Bend, OR 97703, and
D. James Tree, TREE LAW OFFICE, 3711 Englewood Avenue, Yakima, WA 98902. Of Attorneys
for Plaintiff.

Natalie K. Wight, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED
STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204;
Benjamin J. Groebner, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL,
Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of
Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Dawn C. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying Plaintiff's application for supplemental

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial
of the last name of the non-governmental party in this case. When applicable, this Opinion and
Order uses the same designation for a non-governmental party's immediate family member.

security income (SSI) under Title XVI of the Social Security Act (Act). As explained below, the

Court reverses the Commissioner's decision and remands for an immediate award of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must

uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a

rational reading of the record, and this Court may not substitute its judgment for that of the

Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th

Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625,

630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)

(quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a

ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff was born on May 14, 1975. AR 115. Plaintiff applied for DIB and SSI on

March 19, 2015, alleging a disability onset date in January 2007. AR 24. These claims were

denied initially on July 10, 2015, and upon reconsideration on November 5, 2015. *Id.* Plaintiff

requested a hearing on December 2, 2015. *Id.* At her hearing on September 12, 2017, Plaintiff

withdrew her DIB claim and amended her disability onset date to March 19, 2015. *Id.* Plaintiff

was 39 years old as of the amended alleged disability onset date and is currently 47 years old.

The first ALJ, Allen G. Erickson, issued his opinion denying Plaintiff's remaining SSI claim on

March 13, 2018. AR 24-45. The district court remanded by stipulation of the parties in 2020.

AR 1047-48. On remand and after a telephonic hearing on January 7, 2021, a second ALJ, Jo

Hoenninger, issued her decision denying Plaintiff's SSI claim on March 31, 2021. AR 986-1004.

The Appeals Council denied Plaintiff's request for review on May 31, 2021, making final the

ALJ's decision. Compl. ¶ 3.[2] Plaintiff now appeals to this Court.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

---

[2] The parties do not identify in the record, which is more than 4,600 pages, the location of the denial by the Appeals Council, and the Court could not locate it. The Commissioner, however, does not argue that Plaintiff failed to exhaust her administrative remedies or that her allegation that the Appeals Council denied her request for review is inaccurate.

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one of the sequential analysis, the ALJ found that Plaintiff did not engage in substantial gainful activity after the alleged disability onset date. AR 989. At step two, the ALJ identified Plaintiff's severe impairments, including degenerative disc disease, migraine headaches, status post bilateral knee replacements, obesity, post-traumatic stress disorder (PTSD), major depressive disorder, and a panic disorder. AR 989.

At step three, the ALJ found that Plaintiff does not meet the severity requirements of any listed impairment in 20 C.F.R. Part 404, Subpt. P, App'x 1 (hereinafter Listing). AR 990-93. The ALJ found that Plaintiff's degenerative disc disease does not meet or equal Listing 1.04, her knee disorder does not meet or equal Listing 1.02, her obesity does not medically equal any Listing as evaluated by the guidance in Social Security Ruling (SSR) 19-2p, and her mental impairments do not meet or equal Listings 12.04, 12.06, or 12.15. The ALJ also noted that Plaintiff's migraine

headaches do not equal Listing 11.02, the listing for epilepsy, as provided by SSR 19-4p, which offers guidance on how to consider whether headache disorders meet a Listing.

The ALJ next assessed Plaintiff's RFC. The ALJ determined that:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except as follows: She can occasionally climb ramps and stairs. She should not climb ladders, ropes, or scaffolding. She can occasionally stoop, kneel, crouch, and crawl. She can only frequently [sic] reach overhead bilaterally. She should have only occasional exposure to extreme cold, bright sunlight, loud industrial noise, airborne irritants (such as fumes, odors, dusts, gases, and poor ventilation), and hazards (such as unprotected heights and exposed moving mechanical parts). She can understand and remember simple instructions and simple work-like and work-related procedures. She has sufficient concentration, persistence, and pace to complete simple, routine tasks for a normal workday and workweek. She should have only occasional interactions with the general public and coworkers.

AR 993.

At step four, the ALJ found that Plaintiff cannot perform any past relevant work. AR 1002. At step five, based on testimony from the vocational expert as well as Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can work jobs that exist in significant numbers in the national economy, including a marker, housekeeping cleaner, and electrical accessories assembler. AR 1003. Thus, the ALJ found that Plaintiff is not disabled as that term is defined under the Act.

## DISCUSSION

Plaintiff argues that the ALJ erred by (A) improperly assessing Plaintiff's testimony, (B) improperly assessing medical opinions in the record, and (C) failing to find Plaintiff disabled under a Listing in step three. The Court addresses each argument in turn.

## A.  Subjective Symptom Testimony

### 1.  Standard

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[3] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

---

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information about the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

2.  **Analysis**

Plaintiff testified about her symptoms and limitations during her first administrative hearing. She testified that: her knees and legs will "give out" on her; she has knee pain at a level of five or six, despite her double knee replacement; she has low- and mid-back pain at a level of six; she does not take pain medication because of how the medication makes her feel; her insurance would not pay for physical therapy; she has migraine headaches that affect her daily but keep her in bed all day only about two days per month; she gets more migraines when she is stressed; her pain level increases when she is stressed; she let her driver's license expire because she found it stressful and "scary" to drive in the Washington area, where she had moved; she takes public transportation with someone helping her but could sometimes travel alone; she had lived with her ex-fiancé in a small studio apartment where she swept, vacuumed, cooked light meals, and made the bed; she used to walk her dog a couple of blocks a few times per day; as of the hearing she was couch surfing between her parents' and a friend's house; she had started mental health medications that helped her feel more stable; if she worked a simple, sedentary job, she would forget her training and instructions and would have anxiety that some days would keep her in bed; and she has "blacked out" from anxiety and has turned around on her way to the bus or in the middle of grocery shopping. Plaintiff also estimates that she would miss five or more days from work per month if she had a job.

Plaintiff testified about her symptoms and limitations at her 2021 hearing, which was restricted to the time after her first hearing. She testified that her anxiety, migraines, and chronic pain affect her interactions with others. She explained that: her migraines have gotten worse and are stronger; she goes grocery shopping about once per month with a family member; she tries to spend some limited time with a few friends but does not go out in public with them; she reads, colors, scrapbooks, and watches television; she rests in bed; she had attempted suicide "a few"

times since the previous hearing; she cannot walk very far; and she has pain in her lower back. The ALJ discounted Plaintiff's subjective testimony as inconsistent with her activities of daily living, unsupported by Plaintiff's failure to follow the recommended course of treatment, and unsupported by the objective medical evidence.[4]

### a.   Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities cannot discount subjective symptom testimony. *See Molina*, 674 F.3d at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth

---

[4] The ALJ also discounted Plaintiff's subjective testimony because "her providers have consistently recommended conservative treatment for her physical impairment," AR 998, and Plaintiff challenged this reason in her opening brief. ECF 13 at 14. The Commissioner, however, did not defend this reason provided by the ALJ or respond to Plaintiff's arguments challenging this reason. Accordingly, the Commissioner has waived any argument that conservative treatment was a clear and convincing reason to discount Plaintiff's testimony. *See, e.g.*, *Megan S. v. Berryhill*, 2019 WL 1919169, at *5 (D. Or. Apr. 30, 2019) (finding that the Commissioner "has waived any argument that the ALJ provided a clear and convincing reason other than Plaintiff's purported improvement" by failing to respond to Plaintiff's arguments other than generally to assert "harmless error"); *Alesia v. Berryhill*, 2018 WL 3920534, at *7 (N.D. Ill. Aug. 16, 2018) (finding that the Commissioner's "conclusory assertion and overly broad evidentiary citation" is not a sufficient argument and thus waives any argument that the ALJ's conclusion was legally sufficient); *Kelly v. Colvin*, 2015 WL 4730119, at *5 (N.D. Ill. Aug. 10, 2015) (finding that the Commissioner's failure to defend the ALJ's assessment on certain grounds waived those issues).

Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over several months or years and from these conclude that a plaintiff is able to work. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

In dismissing Plaintiff's subjective symptom testimony, the ALJ relied in part on Plaintiff's statement in November 2020 that she babysat two young relatives and helped her parents "pack for a move."[5] AR 998-99, citing AR 2793. The ALJ, however, did not explain *why* these activities precluded the finding that Plaintiff's testimony reflects the severity of her symptoms. "[T]he mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitations." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (finding that the ALJ erred by relying on the claimant's daily childcare activities to dismiss her subjective symptom testimony without specifying the conflict between those activities and the claimant's testimony). The Commissioner argues that *Trevizo* does not apply because it involves a unique situation in which the claimant's childcare responsibilities did not necessarily conflict with her alleged limitations. The holding in *Trevizo*, however, was that the

---

[5] Plaintiff also raises the ALJ's finding that Plaintiff "walks everywhere she goes" as an activity inconsistent with her subjective symptom testimony. AR 998, citing AR 1344. The ALJ mentioned this statement to establish that Plaintiff's symptom testimony conflicts with objective medical evidence, however. AR 998. Regardless, the Commissioner does not address Plaintiff's argument on this point and so waives any rebuttal.

ALJ did not adequately develop the record and identify the conflict between the purported childcare activities and the alleged limitations. *See id.* at 676, 682. The Ninth Circuit also emphasized that childcare activities "permit [the claimant] to rest, take naps, and shower repeatedly throughout the day, all of which would be impossible at a traditional full-time job" and thus are "not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Id.* at 682 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The same circumstances apply here—the ALJ did not identify the specifics of the alleged childcare activities that purportedly conflict with any specific limitation claimed by Plaintiff, nor explain how any such conflict would transfer to a workplace setting.

The same holds for the ALJ's reference to Plaintiff helping her parents pack in preparation for a move. The record contains no pertinent details about this activity in the psychiatric progress note that the ALJ cites. AR 999, citing 2793. There is no information on what Plaintiff means by "helping my parents get packed" or how this contradicts any of her claimed limitations, and the ALJ does not identify the purported contradiction or explain her conclusion. The ALJ thus failed to provide specific clear and convincing evidence that Plaintiff's daily living activities conflict with her subjective symptom testimony.

### b.  Treatment History

The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). Thus, failure to seek treatment can be a basis to deny disability. 20 C.F.R. § 416.930(b). If, however, the claimant has a good reason for not seeking treatment, failure to seek treatment is not a proper basis for rejecting the claimant's subjective symptoms. *See* 20 C.F.R. § 416.930(c); *see also Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("We certainly agree with all the other circuits that a disabled claimant cannot be

denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment."). Thus, an ALJ must consider a claimant's reasons for failing to adhere to recommended treatment before making an adverse credibility finding. *See Smolen*, 80 F.3d at 1284; *see also* SSR 16-3p, *available at* 2017 WL 5180304, at *9 (Oct. 25, 2017) (explaining that an ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints" and that the Commissioner "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints").

The ALJ disregarded Plaintiff's symptom testimony about the severity of her migraines because Plaintiff declined a referral that she received in 2017 for a neurologist. AR 997, citing 1505. The ALJ pointed out that Plaintiff instead stated that she could "handle the discomfort for now and would rather not try anything different." *Id.* The ALJ overlooked Plaintiff's reasons for why she declined this referral, however. Plaintiff testified that a neurologist had offered to try "injections in my head or some sort of electro magnetic therapy" to help with Plaintiff's migraines, AR 1028, and that this treatment "scared her," AR 2326. Plaintiff had also been told two years earlier by Dr. Sarabjit Atwal that the doctor had "no additional medications to offer at this time" to help with the migraines. AR 2600-01. The ALJ did not consider Plaintiff's reason for rejecting her 2017 neurology referral, with or without context of Plaintiff's treatment history. This was error.

### c.  Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. § 416.929(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The Court has rejected the other reasons proffered by the ALJ to discount Plaintiff's subjective symptom testimony. Accordingly, the Commissioner may not rely on the ALJ's recitation of the objective medical evidence and how it purportedly does not corroborate Plaintiff's alleged limitations. This reason alone cannot discount Plaintiff's testimony. Thus, the ALJ failed to provide a legally sufficient reason to discount Plaintiff's testimony.

## B.  Medical Opinions

### 1.  Standards

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit and the Commissioner[6] distinguish between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison*, 759 F.3d at 1012. "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."

---

[6] Because Plaintiff filed her application before March 17, 2017, the application is governed by 20 C.F.R. § 416.927, and the revised rules relating to the consideration of medical opinion testimony do not apply.

*Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also* 20 C.F.R. § 416.927(c)(1)-(2). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, a court gives the treating physician's opinion controlling weight. *Holohan*, 246 F.3d at 1202; *see also* 20 C.F.R. § 416.927(d)(2). A court may reject a treating doctor's uncontradicted opinion only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If the opinion of another physician contradicts a treating doctor's opinion, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631; *see also* 20 C.F.R. § 416.927(c)(1). As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of another physician contradicts the opinion of an examining physician, the ALJ must provide "specific, legitimate reasons . . . supported by *substantial record evidence*" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (emphasis added in *Lester*) (quoting *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995)). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts*, 66 F.3d at 184.

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or

that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554

F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Andrews*, 53 F.3d

at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while

doing nothing more than ignoring it, asserting without explanation that another medical opinion

is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive

basis" for the ALJ's conclusion. *Garrison¸* 759 F.3d at 1012-13; *see also Smolen*, 80 F.3d

at 1286 ("[The ALJ] did not discuss the opinions Dr. Smolen and Dr. Hoeflich offered in other

letters. By disregarding those opinions and making contrary findings, he effectively rejected

them. His failure to offer reasons for doing so was legal error.").

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In

other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own

interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d

at 725. "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial

evidence that justifies the rejection of the opinion of an examining or treating physician."

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted);

*but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial

evidence when they agree with independent clinical findings or other evidence in the record).

### 2. Analysis

#### a. Advanced Registered Nurse Practitioner Caleb Ledford

Plaintiff first contends that the ALJ erred in giving little weight to the findings of treating

provider Advanced Registered Nurse Practitioner Caleb Ledford. AR 1000. Because Ledford is a

nurse practitioner, he is considered an "other" medical source. An ALJ must consider "other"

medical source opinions, explain the weight given to such opinions, and provide sufficient analysis to allow a subsequent reviewer to follow the ALJ's reasoning. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5845; *see also* 20 C.F.R. § 416.927(f). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

Ledford treated Plaintiff from February through December of 2015. On December 31, 2015, Ledford issued findings about limitations that Plaintiff had suffered since February. AR 846-47. Ledford found that Plaintiff would need to lay down during the day because of pain. AR 846. Ledford also found that Plaintiff could not meet even sedentary work demands, would miss at least one day of work per month to attend medical appointments, and would experience deterioration in her anxiety if she worked on a regular and continuous basis. AR 846-47, 864.

In evaluating Ledford's opinion, the ALJ did not address Ledford's findings that Plaintiff would need to lie down during the day or that her anxiety condition would deteriorate from regular and continuous work. AR 1000. The ALJ stated that Ledford's conclusion that Plaintiff would miss one day per month conflicted with the record, but the ALJ did not cite the record or explain this conclusion or the purported inconsistency any further.[7] *Id.*

The ALJ also found that Ledford's conclusion that Plaintiff could not perform sedentary work conflicted with medical evidence from Dr. Atwal and more recent evidence that Plaintiff

---

[7] The Commissioner cites *Goodman v. Berryhill* to argue that excessive absence due to the frequency of medical appointments cannot lead to a finding of disability. 2017 WL 4265685, at *2-4 (W.D. Wash. Sept. 25, 2017) ("[T]he Court rejects that frequency of medical appointments alone can be considered a disabling medical impairment."). The ALJ here, however, stated that Ledford's finding as to the frequency of Plaintiff's medical appointments conflicted with the record and was reason to discount Ledford's opinion. The court in *Goodman* asserts a different proposition related to medical appointment frequency and disability.

walked for transportation. AR 1000-01. As to the former, the ALJ stated that Dr. Atwal found that Plaintiff had full strength in her upper and lower extremities and no asymmetry, atrophy, or involuntary movements. *Id.*, citing 714-15. In addition, Dr. Atwal noted that Plaintiff had deep tendon reflexes, normal gait, and normal sensation. *Id.*

Dr. Atwal, however, is a neurologist who Plaintiff consulted for her migraine symptoms. AR 997. Dr. Michael Turner, a treating physician from the same clinic as Dr. Atwal, observed around the same time that Plaintiff had "pain with passive range of motion of the knees" and "notable tenderness to palpation," AR 2586, and that her "knee pain is particularly worse with standing or walking," with "shooting pains in her legs go numb [sic]" and where on "several occasions her knees have buckled in hyperextension she has fallen [sic]." AR 709. Other treating physicians drew similar conclusions as Dr. Turner around the same time.[8] The ALJ's reliance on Dr. Atwal's observations to discount Ledford's conclusions was not germane where Ledford's opinion matches those of other contemporaneous treating medical opinions addressing the same medical problem.

As to the reason that Plaintiff walked for transportation, the ALJ did not cite anything in the record in support of this claim, nor does the Commissioner defend this reason. Because the ALJ failed to provide a germane reason to discount Ledford's medical opinion, the ALJ erred in according that opinion little weight.

---

[8] Dr. Turner's observations came from exams he administered on July 27 and June 10 of 2015, respectively. For similar observations from other treating physicians from the same time, *see* AR 723-24 (Dr. Michael James Hauke noted on August 17, 2015, that Plaintiff had "[s]hooting pain and poorly localized, poorly described numbness in the [right] leg," though he categorized these symptoms under the "Neuro" subheading); AR 3178-79 (physical therapist Caitlyn McCartney noted on October 20, 2015, that Plaintiff's "movements are extremely guarded" and that she "is limping due to her right leg and back pain").

### b.  Dr. Gregory Sawyer

Plaintiff argues that the ALJ erred in giving little weight to the opinion of Dr. Gregory Sawyer, MD, Ph.D., examining psychiatrist. Dr. Sawyer conducted an evaluative examination of Plaintiff on June 21, 2015, and issued an opinion. AR 684-91. Dr. Sawyer concluded that Plaintiff would struggle to accept instructions from and maintain social interactions with supervisors and coworkers; perform work activities without special or additional instruction; sustain concentration; work at a reasonable pace; maintain attendance; and complete a normal workday or workweek. AR 690-91. Dr. Sawyer drew these conclusions following a comprehensive psychiatric evaluation. AR 684. The ALJ discounted Dr. Sawyer's opinion because, according to the ALJ, Dr. Sawyer "did not opine to what degree the claimant would 'have difficulty'" with these tasks. AR 1001.

The Commissioner contends that Dr. Sawyer's opinion was too vague to help determine Plaintiff's RFC. As support, the Commissioner cites *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). In *Ford*, the Ninth Circuit affirmed an ALJ's conclusion that a doctor "did not provide useful statements regarding the degree of Ford's limitations," when the doctor described the claimant's "ability to perform in the workplace as 'limited' or 'fair'" because "the ALJ could reasonably conclude these characterizations were inadequate for determining RFC." *Id.* The Ninth Circuit also determined that the record was fully developed on the issue because the ALJ had years of mental health records and multiple opinions from other mental health providers. *Id.*

This case is distinguishable from *Ford*. First, Dr. Sawyer does provide some useful statements about Plaintiff's limits. For example, Dr. Sawyer notes that Plaintiff may especially struggle with male supervisors due to her PTSD triggers. AR 690. Dr. Sawyer also finds that "although the claimant was able to perform a three-step command my impression was that she would have difficulty if we asked her to do anything more than that very simple set of

behaviors." *Id.* Second, Dr. Sawyer does not simply state that Plaintiff is "limited," but opines that she would have difficulty in specific functional areas that are critical to employment, such as attending work regularly; maintaining social interactions, including with supervisors and coworkers; performing work activities on a consistent basis; and managing her concentration, persistence, and pace. The Ninth Circuit has required ALJs to "translate" these and similar limitations from medical opinions into RFCs. *See, e.g.*, *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-75 (9th Cir. 2008) (discussing whether the ALJ properly incorporated the doctor's opinion that the claimant had a "slow pace, both with thinking and her actions" and was "'moderately limited' in her ability to 'to perform at a consistent pace without an unreasonable number and length of rest periods'"); *see also Lubin v. Comm'r of Soc. Sec. Admin.*, 507 F. App'x 709, 711 (9th Cir. 2013) (concluding the ALJ erred by rejecting the psychologist's opinion that the claimant "exhibited 'a severe level of depression and anxiety;' was unable to maintain persistence and pace for 8 hours a day, 5 days a week; and had problems with concentration"). Therefore, the ALJ failed to provide a specific, legitimate reason to discount Dr. Sawyer's testimony.

### c.   Drs. Tai-Im Moon & Aaron Burdge

Plaintiff contends that the ALJ erred in her approach to the opinions of Drs. Tai-Im Moon, Ph.D., consultative examiner, and Aaron Burdge, Ph.D., who reviewed Plaintiff's file and agreed with Dr. Moon's conclusions. The ALJ stated that she gave great weight to these medical opinions, AR 1001, but Plaintiff argues that the ALJ would have found Plaintiff disabled if this were the case.

Dr. Moon completed a psychological evaluation questionnaire after examining Plaintiff on July 30, 2015. AR 856-61.[9] In a checkbox section of the form, Dr. Moon found that Plaintiff's symptoms have a "moderately" severe effect on seven specific functional areas, including her ability to perform activities within a schedule, maintain regular attendance, and be punctual; communicate and perform effectively in a work setting; and complete a normal workday and workweek without interruptions from psychologically based symptoms. AR 859. According to the form, a "moderate" severity rating "means there are significant limits on the ability to perform one or more basic work activity." *Id.* The ALJ gave Dr. Moon's opinion "great weight." Plaintiff, however, argues that the ALJ erred because she failed to explain why she did not incorporate Dr. Moon's significant attendance limitations into Plaintiff's RFC, which states that Plaintiff "has sufficient concentration, persistence, and pace to complete simple, routine tasks *for a normal workday and workweek*." AR 993 (emphasis added).

Plaintiff argues that the abilities to maintain attendance, be punctual, and complete a normal workday or week are strictly construed, and thus the ALJ's failure to address Dr. Moon's "moderate" severity rating for Plaintiff or incorporate these limitations in the RFC is harmful error.[10] Courts have referenced the POMS in finding error when an ALJ failed to incorporate similar limitations into a Plaintiff's RFC. *See, e.g.*, *Herrera v. Kijakazi*, 2022 WL 604728, at *4

---

[9] The Court is uncertain whether Dr. Moon's entire report is in the record. The record contains six pages of a report, but it is unclear whether the last page is the final page of the report.

[10] *See* Program Operations Manual Sys. (POMS) DI § 25020.010(B)(3) (requiring that a claimant must show the ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods," and noting that "[t]hese requirements are usually strict"); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006) ("The POMS does not have the force of law, but it is persuasive authority.").

(D.N.M. Mar. 1, 2022) ("Both maintaining attendance/punctuality and working in proximity to others without being unduly distracted by them are abilities that the Social Security Administration deems critical to performing even unskilled work. In other words, if the ALJ weighed and accepted [the doctor's] opinions, then Plaintiff's RFC would have rendered him disabled." (citation omitted)); *Rees v. Colvin*, 2017 WL 3600744, at *5-6 (D.N.M. Jan. 12, 2017) ("I conclude that the ALJ committed error by failing to either incorporate Dr. Beale's opinion that Plaintiff has moderate limitations in concentration, persistence, and pace into Plaintiff's RFC or to otherwise explain why she rejected that finding.").

The Commissioner's counterarguments are unavailing. The Commissioner cites *Hoopai v. Astrue* for the proposition that "moderate" limitations are not necessarily disabling. 499 F.3d 1071, 1077 (9th Cir. 2007). But *Hoopai* concerns a claimant who challenged an ALJ's decision not to consult a VE at step five, which is not the case here. *Id.* at 1075. In *Hoopai* the Ninth Circuit discussed the "severity" of the claimant's symptom for steps two and five, not in the RFC. *Id.* at 1075-76. Further, the issue is not whether the limitations found by Dr. Moon are disabling, but whether the ALJ erred by failing to address or incorporate those findings.

The Commissioner also contends that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC," *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015), and that the ALJ did so here. The ALJ, however, did not mention the attendance or punctuality limitations that Dr. Moon noted, nor does Plaintiff's RFC refer to any such limitations. The Court does not see how Dr. Moon's clinical findings about these limitations, which Dr. Burdge endorsed, have been translated or incorporated into Plaintiff's RFC. The ALJ thus erred in failing to address these medical findings.

### d. LICSW Christine Ames

Plaintiff argues that the ALJ erred by dismissing the opinion of Christine Ames, licensed independent clinical social worker (LICSW). Ames found that Plaintiff had several severe mental limitations, that Plaintiff would be "off-task" for more than 30% of a 40-hour workweek, and that Plaintiff would likely miss four or more days of work per month. AR 850-51.

The ALJ gave little weight to Ames's opinion because, according to the ALJ, "this opinion is supported by no explanation or analysis" and "is also inconsistent with the record." AR 1001. Plaintiff argues that the ALJ faulted Ames for completing a checkbox report and that "there is no authority that a 'check-the-box' form is any less reliable than any other type of form." *Trevizo*, 871 F.3d at 677 n.4; *see also Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) ("Simply put, the fact Dr. Sorrell, an 'other source,' provided information in a check-box form provides no reason to reject her opinions, much less a germane reason.").

The ALJ, however, did not reject Ames's opinion only because she presented it in check-box form. The ALJ noted specific inconsistencies between Ames's observations and other evidence in the record, including Dr. Moon's exam findings on Plaintiff's comprehension and memory. AR 1001. "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198. It was rational for the ALJ to discount Ames's conclusions about Plaintiff's limitations as inconsistent with the observations of others, especially treating physicians. Accordingly, the ALJ did not err in affording Ames's opinion little weight.

## C. Step Three Analysis

At step three of the sequential evaluation process, the ALJ must consider whether a claimant's severe impairments, either separately or in combination, meet or equal one of the presumptively disabling impairments listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii).

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Yet the ALJ need not discuss the findings in any specific section of the opinion. *Lewis*, 236 F.3d at 513.

To demonstrate that an impairment is the medical equivalent of a listed disability, a claimant must present medical findings equal in severity to all the criteria of a listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) ("Medical equivalence must be based on medical findings." (citing 20 C.F.R. § 404.1526)). If a claimant succeeds in doing so, "the claimant is considered disabled and benefits are awarded, ending the inquiry." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013).

In this case, the ALJ found that Plaintiff did not meet any of the listed impairments. Plaintiff argues that the ALJ failed to conduct an adequate analysis and improperly found that Plaintiff's impairments do not meet or equal a listing at step three. Plaintiff argues that the ALJ erred in failing to assess Plaintiff as disabled (1) based on her equaling Listing 11.02B with her primary headache disorder and (2) based on her meeting the Paragraph C requirements of Listing 12.00 for mental disorders.

### 1. Listing 11.02B

Headache disorders do not have their own listing. ALJs instead evaluate headache disorder claims under the listing for epilepsy, Listing 11.02. *See* SSR 19-4p, 84 Fed. Reg. 44667 (Aug. 26, 2019). A claimant must have headache events "occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment" to equal Listing 11.02B.[11]

---

[11] The Commissioner in this case argues that Listing 11.02 requires "alterations of consciousness." That symptom, however, is not required in Listing 11.02. It is noted in Listing

*Id.* To determine whether a claimant's symptoms are "equal in severity and duration to the criteria in 11.02B," the ALJ must consider:

> a detailed description from an [acceptable medical source (AMS)] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.*

The ALJ found only that the "record does not show that the functional limitations from the claimant's headache disorder, either alone or in combination with the claimant's other impairments, medically equal listing 11.02." AR 991. Plaintiff argues that the ALJ's step three finding is not supported by substantial evidence and that Plaintiff provided objective medical evidence showing that her symptoms equal the requirements of Listing 11.02B. The ALJ's conclusory statement that Plaintiff does not satisfy the criteria for Listing 11.02 can be sufficient articulation for a step-three finding, so long as the ALJ's discussion "at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." SSR 17-2p, 82

---

11.00H1b, in answering the question "what is epilepsy and how do we evaluate it," and describes "dyscognitive seizures" as "characterized by alteration of consciousness without convulsions or loss of muscle control." It does not relate to headache disorders. The Commissioner generally has explained that for headaches, Listing 11.02 is the "closest" and describes the elements the Commissioner will consider when evaluating whether headaches meet the listing, and those elements are only the ones established in Listing 11.02B and 11.02D. *See* SSR 19-4p (lacking any reference to "alterations of consciousness").

Fed. Reg. 15263, 15265 (Mar. 27, 2017). The Court thus examines whether the ALJ elsewhere provides substantial evidence that Plaintiff does not satisfy the criteria for Listing 11.02B.

The ALJ's finding that Plaintiff does not equal the criteria for Listing 11.02B contradicts the medical record and the ALJ's own opinion. The ALJ did not contest that Plaintiff experiences headache events daily; that Plaintiff wakes up and goes to sleep with a migraine; that noise, light, movement, and stress worsen Plaintiff's migraines; that these migraines sometimes make Plaintiff vomit or lose her vision; and that medication is not effective in controlling Plaintiff's migraines. AR 993-94. Plaintiff also testified, and the ALJ did not dispute, that Plaintiff's migraines last for most of the day and require that she lie down in the dark to "deal with them." AR 1029, 711. These uncontested features of Plaintiff's headache events would seem to qualify her as disabled under Listing 11.02B, per SSR 19-4p.

Instead, the ALJ made findings about the severity of Plaintiff's migraines that are unsupported by substantial evidence. For example, the ALJ described advice that Dr. Atwal gave to Plaintiff—to get regular sleep and eat healthier—as "conservative treatment." AR 997, citing AR 716. ALJs may use evidence of "conservative care" to discount testimony on an impairment's severity. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Dr. Atwal, however, gave Plaintiff these recommendations alongside various prescriptions and laboratory and other tests, because Dr. Atwal was "uncertain of the etiology of the daily headaches." AR 715-16. It is not "conservative treatment" to recommend that a patient get regular sleep and exercise along with trying medication and scheduling tests. Later, Dr. Atwal told Plaintiff that she had "no additional medications to offer at this time" to help with Plaintiff's migraines, because so many medications had been ineffective in treating her headaches. AR 2600-01.

The ALJ also found that treatment for Plaintiff's migraines "has been routine, and has primarily consisted of Topiramate." AR 997. The record reflects the opposite. Objective medical evidence in the record shows that Plaintiff has attempted to manage her migraines with Imitrex, AR 488; Maxalt, propranolol, and butalbital, AR 432-33; amitriptyline, AR 757; Ketorolac and Prochlorperazine, AR 763; Ultram, Dilaudid, Excedrin, ibuprofen, and Vicodin, AR 711; and promethazine, AR 769. Evidence in the record also suggests that Topiramate does not successfully alleviate Plaintiff's migraine symptoms and that Plaintiff's migraine symptoms have worsened over time. AR 754, 763. The record thus undercuts the ALJ's conclusion and the Commissioner's argument before this Court that Plaintiff's "treatment for migraine was limited to Topiramate." That Plaintiff has not remained on the many ineffective medications she has sampled is not substantial evidence that her symptoms are non-severe.

Similarly unconvincing is the ALJ's finding that Plaintiff's migraine symptoms are not severe because Plaintiff did not follow up with a neurologist after 2015. Plaintiff had already seen a neurologist and was "scared" by the recommended treatment, which involved "inject[ing] her head and treat[ing] her with magnets." AR 2326. As to Plaintiff's visits to the emergency department for her headaches, the record contains several examples of emergency room visits related to Plaintiff's migraines, contrary to the ALJ's assertion that few exist. *See, e.g.*, AR 694, 702, 1641. In any case, Plaintiff need not have frequented the hospital for assistance with her migraines when, as the ALJ noted, she experienced them daily and medications were ineffective.

Finally, the ALJ erred in extrapolating from Plaintiff's testimony during her first hearing that she can "usually can function despite having a migraine." AR 997. At the first hearing, Plaintiff testified that she could "often times just work [her] way through" a migraine. AR 86. In context, Plaintiff explained that even with a migraine, she "usually" could do "[l]ight

housework" at home, although tasks like driving remained beyond her. AR 83. She also testified, however, that when she is subject to stress, her migraines are fully incapacitating, and that even with managing stress she is incapacitated at least a few days per month. AR 101. She estimated based on her experience that if she were working, she would miss more than five days per month based on her headaches. AR 103. At the second hearing, she testified that her migraines had become more severe in the time after her first hearing. AR 1023. That a migraine does not fully incapacitate Plaintiff every day in her current sheltered existence—but only does so several days a month—is not substantial evidence that these migraines are not severe enough to qualify Plaintiff for Listing 11.02B.

Accordingly, the ALJ's finding that Plaintiff does not equal Listing 11.02B is not supported by substantial evidence. The ALJ's finding of non-disability at step three is reversed.

### 2.  Listing 12.00, Paragraph C

Plaintiff also argues that the ALJ erred by improperly assessing the evidence for whether Plaintiff met the criteria for paragraph C of Listings 12.04, 12.06, and 12.15. AR 992. To be found disabled under these listings, Plaintiff's mental disorder must satisfy the requirements under paragraphs A and either B or C of those listings. The ALJ did not dispute that Plaintiff met the criteria for paragraph A, but stated that the evidence failed to establish that Plaintiff met either the paragraph B or C criteria.

Plaintiff argues that the ALJ erred because the ALJ did not cite the record in her rejection of Plaintiff's paragraph C eligibility. Plaintiff also argues that the ALJ would have had to find Plaintiff disabled had the ALJ properly evaluated the record.

To satisfy the paragraph C criteria, a plaintiff must provide evidence that her mental disorder is "serious and persistent." 20 C.F.R. Pt. 404, Subpt. P, App'x 1. That is, the plaintiff must "have a medically documented history of the existence of the disorder over a period of at

least two years" and must present evidence of both "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder" and "[m]arginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." *Id.*

As with Listing 11.02B, the ALJ provided only a brief boilerplate explanation without record citations in her conclusion that Plaintiff did not meet the paragraph C criteria. This is error unless the ALJ elsewhere in the opinion discussed evidence that supports her finding that Plaintiff did not meet paragraph C. *See Lewis*, 236 F.3d at 512. The Commissioner does not argue that the ALJ did so. Instead, the Commissioner contends that the ALJ's interpretation of the evidence is reasonable and supported by substantial evidence, without identifying the ALJ's findings or evidence, or where in the opinion the Court may find this reasonable interpretation explained by the ALJ. The Commissioner has thus effectively waived its response to Plaintiff's argument that the ALJ did not support her finding that Plaintiff did not meet the paragraph C criteria. Nor could the Court discern any analysis relating to paragraph C elsewhere in the ALJ's opinion.

Any error by the ALJ, however, is harmless. "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (cleaned up)). A court should not automatically reverse on account of error, but should make a determination of prejudice. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). "Determination of prejudice requires 'case-specific application of judgment, based upon examination of the record,' not 'mandatory presumptions and rigid

rules.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)). These case-specific factors are "various" and potentially include, among others:

> an estimation of the likelihood that the result would have been different, an awareness of what body (jury, lower court, administrative agency) has the authority to reach that result, a consideration of the error's likely effects on the perceived fairness, integrity, or public reputation of judicial proceedings, and a hesitancy to generalize too broadly about particular kinds of errors when the specific factual circumstances in which the error arises may well make all the difference.

*Shinseki*, 556 U.S. at 411-12.

The party claiming error has the burden "to demonstrate not only the error, but also that it affected his [or her] 'substantial rights,' which is to say, not merely his [or her] procedural rights." *Ludwig*, 681 F.3d at 1054. Additionally, a reviewing court can determine, based on the circumstances of the case, that further administrative review is required to determine whether there was prejudice from the error. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Mere probability of prejudice is not enough, but where there is a substantial likelihood of prejudice, then remand is appropriate. *Id.*

Plaintiff fails to meet her burden of showing harmful error because she fails to show that the record supports that Plaintiff meets the requirement in paragraph C that she has a minimal capacity to adapt to changes in her life that are not already part of her daily routine. As Plaintiff argues, the record shows that she experiences anxiety attacks and plans her activities of daily living so as to minimize her exposure to others. *See* AR 2158 (note by qualified mental health associate Cassidy Brons, observing that Plaintiff had a panic attack and dissociated due to a "very crowded" waiting room); AR 2174 (same, observing that Plaintiff experienced anxiety at a Walmart pharmacy "due to the large crowds"). The record also shows, however, that Plaintiff has adjusted to significant changes in her life, like moving throughout the Pacific Northwest,

separating from a fiancé, losing custody of her children, and getting injured in a motor vehicle accident. *See* AR 87-89, 95-96. The record does not indicate that these events caused Plaintiff to experience periods of decompensation, as required by the paragraph C criteria. Thus, it is not likely that the outcome would have been different had the ALJ properly considered the record. Accordingly, the Court finds that Plaintiff failed to show that ALJ's error was harmful or that Plaintiff met the paragraph C criteria.

### D. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler.*, 775 F.3d at 1099-100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion

to remand for an award of benefits. *Id*. The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id*. at 408.

As discussed, the ALJ erred in failing to properly assess Plaintiff's subjective symptom testimony, several medical opinions, and the record as to whether Plaintiff equals Listing 11.02B. The Commissioner argues that the Court should remand for further proceedings, but does not identify any ambiguities in the record that remain to be resolved. Plaintiff's claim has already been remanded. The voluminous record is fully developed. The Court finds that further administrative proceedings would serve no purpose. *Dominguez*, 808 F.3d at 407.

Following the credit-as-true steps, the Court credits the improperly discounted testimony as true. Crediting Plaintiff's subjective symptom testimony and the medical opinions of Ledford, Dr. Sawyer, and Dr. Moon as true, the Court finds that the ALJ would be required to find Plaintiff disabled upon remand. Ledford concluded that Plaintiff could not meet even sedentary work demands and would miss more work than employers would tolerate, according to the vocational expert. AR 1039-40. Drs. Sawyer and Moon also found that Plaintiff would have difficulty meeting the attendance requirements of a 40-hour workweek, on top of other severe challenges that Plaintiff would face in the workplace. Finally, Plaintiff's testimony about the severity of her mental disabilities, her back and knee pain, and her migraines, as well as her estimate that she would miss at least five days of work per month, renders her unemployable. Plaintiff made this estimate during the first hearing and afterwards testified that her migraines and her anxiety have since worsened. Even crediting as true only Plaintiff's original five days per month estimate, the vocational expert testified that missing two days of work per month renders a person unemployable. The Court, therefore, reverses the Commissioner's decision and remands for an immediate award of benefits.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff is not disabled and

REMANDS this case for an immediate calculation and payment of benefits.

**IT IS SO ORDERED**.

DATED this 7th day of March, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge